IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFRED HOLES, | ) | |
| Plaintiff, | ) ) ) | |
| -vs- | ) ) | Civil Action No. 17-271 |
| NANCY A. BERRYHILL,[1] COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Alfred Holes ("Holes") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying his claim for a period of disability and disability insurance benefits ("DIB") and his claim for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-1383f. He alleges a disability beginning on January 1, 2011. (R. 13) Following a hearing before an ALJ, during which time both Holes and a vocational expert ("VE") testified, the ALJ denied his claim. (R. 13-25) Holes appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [11] and [13].

### Legal Analysis

1. Standard of Review

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of at least 12 months. [42 U.S.C. § 423(d)(1)(A)](); [Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986)](). The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. [20 C.F.R. § 404.1520(a)](). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. [20 C.F.R. § 404.1520](). The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). [Dobrowolsky, 606 F.2d at 406](). Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). [Id.]() A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. [Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984)]().

   2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Holes had not engaged in substantial gainful activity since January 1, 2011, the onset date. (R. 15) At step two, the ALJ concluded that Holes has the following severe impairments: diabetes mellitus, diabetic ulceration /

cellulitis of the right great toe, degenerative joint disease of the left shoulder, diabetic neuropathy and radiculopathy of the lower extremities, chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine status post lumbar laminectomy, synoval cyst status post resection, obesity, antisocial personality disorder, cannabis dependence, major depressive disorder, impulse control disorder, bipolar disorder, generalized anxiety disorder, social phobia, intermittent explosive disorder, obsessive-compulsive disorder, and insomnia / sleep disorder. (R. 15) Although the ALJ found reference to other impairments in the record, he determined that they were non-severe. (R. 16)

At step three, the ALJ concluded that Holes does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered Holes's physical impairments under Listings 1.02, 1.04, 3.02 and 9.00. Further, "[a]lthough no listing presently exists for obesity, the claimant's obesity has been considered both by itself and with his other impairments." (R. 16) He also considered her mental impairments under Listings 12.03, 12.04, 12.06, 12.08 and 12.09. (R. 16-18

Prior to engaging in step four, the ALJ assessed Holes's residual functional capacity ("RFC").[2] He found Holes able to perform a range of sedentary work with certain restrictions. (R. 18) At step four, the ALJ determined that Holes was unable to

---

[2] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

perform past relevant work as a laborer because the exertional demands of such work exceed the limitations of his RFC. (R. 23)

Finally, at step five, the ALJ found that, considering Holes's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that Holes can perform. (R. 23) For instance, the ALJ explained that Holes will be able to perform the requirements of representative occupations such as surveillance systems monitor and an assembler. (R. 24)

3. Medical Opinions

Holes argues that the ALJ improperly weighed the opinion evidence. *See* ECF docket no. 12, p. 16. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*, § 416.927(c)(2). However, the opinion of a treating physician need not be viewed uncritically. Rather, only where the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id*. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ

generally] will give to that opinion." *Id*, § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, 'where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions of disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially

pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Holes spends a significant portion of his brief replicating the medical records. *See* ECF docket no. 12, p. 4-12. He then urges that the medical records support the opinions of Dr. Goral and Dr. Kalik. The ALJ gave these same opinions "little weight." To be clear, the standard is not whether there is evidence to establish Holes's position but, rather, is whether there is substantial evidence to support the ALJ's finding. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Thus, his argument is misplaced.

(a) Dr. Goral

Dr. Goral provided a "Treatment Summation" dated September 2, 2014 in which he opined that "Alfred has multiple physical and psychiatric issues that make him unable to maintain suitable employment now and in the foreseeable future." (R. 421) The ALJ gave Goral's opinion "little weight" because "the psychologist lacks the opportunity to evaluate the claimant's marijuana usage because it was concealed from him" and because the "opinion appears to be based, in part, on the claimant's physical limitations, which are beyond his expertise." (R. 23) Holes insists that the ALJ's decision in this regard is not based upon substantial evidence of record because there is no indication that the marijuana use was "concealed" from Goral. I disagree. The evidentiary record contained Dr. Goral's notes from his treatment sessions with Holes and his initial "complete psychological examination" done on December 10, 2013 at the request of Holes's attorney. (R. 654-676) Goral's records confirm that Holes represented the information he provided was true, valid and reliable. (R. 670) Holes informed Goral that he had stopped smoking cigarettes in mid-2013 and that he "has never had any

7

problems with alcohol or other substances." (R. 671) Contrary to Holes's assertions, the record is replete with references to Holes's continued use of marijuana. (R. 193, 307). Indeed, the records indicate that Holes used marijuana while hospitalized. (R. 332, 335). His physician expressed a fear of Holes's abusing marijuana. (R. 336) UPMC medical records noting use of marijuana). Fluctuations in test results was also believed to be attributable to Holes's ingestion of a marijuana cookie while hospitalized. (R. 593) Consequently there is ample evidence in the record to support the ALJ's conclusion that Holes hid his use of marijuana from Dr. Goral. Nor do I find persuasive Holes's contention that Goral's reference to "physical impairments" was only in the context of how they impacted his mental state. For instance, Dr. Goral very clearly references Holes's physical issues as a basis for preventing him from engaging in sustainable employment. (R. 421) See also (R. 675, stating, "his psychological and medical problems in combination would appear to preclude him from being able to hold and sustain any job at this time in his life."). Goral does not make any such connections between the physical and mental impairments. He references diabetes, arthritis, and emphysema but fails entirely to explain how these conditions impair Holes's mental state. Finally, the ALJ was not required to give Goral's opinion in this regard any deference because it constituted a legal conclusion on an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1), (3). Consequently, I find that the ALJ did not err with respect to his assessment of Dr. Goral's opinion.

(b) Dr. Kalik

Nor do I find any error with respect to his assessment of Dr. Kralik's opinion. Dr. Kralik completed a medical source statement in which he indicated that Holes could sit

8

for one hour at a time without interruption and for a total of 3 hours in an eight-hour workday. (R. 249) The ALJ gave Kalik's opinion "little weight" because he found no record support "for the extreme limitation on sitting." (R. 23) Significantly, Kalik does not include any medical or clinical findings in support of his sitting / standing / walking restrictions despite the form's request to include the same. (R. 249) Indeed, the only reference to "sitting" that Kalik makes in his Disability Evaluations is to comments that Holes, himself, makes. For instance, he notes that *"[t]he patient states* that he can sit only for about 3 to 4 minutes before he has to change position." (R. 224) One month later, at a reevaluation, Kalik indicates that *"[t]he patient states* that he can sit for about 5 to 10 minutes before he has to change position." (R. 227) (emphasis added) Kalik gives no indication of endorsing either of Holes's representations. In fact, in a range of motion chart, Kalik does not document any limitations with respect to forward flexion, internal or external rotation, backward extension, abduction or adduction of the hips, or any lateral flexion, flexion, or rotation of the cervical spine, or any flexion extension or lateral flexion of the lumbar spine. (R. 231) Given the complete lack of any medical support for Kalik's conclusion regarding the limitations on sitting, I find that the ALJ did not err in his weighing of the medical opinions.

    4. <u>Complaints of Pain</u>

Lastly, Holes argues that the ALJ erred by failing to adequately explain why he found Holes to be less than fully credible. *See* ECF docket no. 12, p. 16-20. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision must "contain specific reasons for the finding on credibility, supported by the

evidence in the case record, and be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Zirsnak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 15) Pain alone, however, does not establish disability. 20 C.F.R. § 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id*. Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude

that some or all of the claimant's testimony about his or her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

After a review of the record, I find that the ALJ followed the proper method to determine Holes's credibility. As laid out in his decision, the ALJ considered the factors set forth above and adequately explained the reasoning behind his credibility determinations. (R. 18-23) For example, while assessing Holes's credibility, the ALJ compared the medical evidence and the evidence of record to Holes's complaints and found them to be contradictory. *Id.* In particular, he found that "the evidence of record fails to fully support the allegation of disability." (R. 20) The ALJ explained how the documentary evidence "reflects a longtime history of diabetes mellitus with little to no treatment by the claimant." (R. 20) Similarly, with respect to the diabetic ulcer on his right great toe, Holes signed out from the hospital against medical advice and then ignored the injury for approximately seven months before seeking medical attention. (R. 20) With respect to Holes's mental complaints, the ALJ found that "the documentary evidence once again fails to fully support the allegation of disability." (R. 21) For instance, Holes did not seek mental health treatment until approximately two years after the alleged onset of disability. (R. 21) Holes complained of hearing voices, but none of his doctors diagnosed psychosis. (R. 21) Finally, the ALJ noted "troubling inconsistencies," including Holes's testimony that his healthcare noncompliance is due to lack of money, but he received State subsidized healthcare insurance for a period of time and sufficient funds to purchase both cigarettes and marijuana. (R. 22) Further, the ALJ did not reject Holes's allegations of pain entirely. Rather, he incorporated numerous limitations related to Holes's pain complaints in the RFC finding. See (R. 18) (RFC

finding containing limitations on, *inter alia*, balancing, stooping, climbing, crawling and limiting interactions with others). Thus, I find that the ALJ properly evaluated Holes's credibility as required by 20 C.F.R. § 404.1529, § 416.929 and SSR 96-7p. Furthermore, based upon the entire record as a whole, I find there is substantial evidence to support the ALJ's decision to find Holes not entirely credible. (R. 14-19) Therefore, I find no error in this regard. Consequently, remand is not warranted on this basis.

    An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFRED HOLES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   -vs- | ) | Civil Action No. 17-271 |
| | ) | |
| NANCY A. BERRYHILL,[3] | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 6th day of March, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED.

                                            BY THE COURT:

                                            /s/ Donetta W. Ambrose
                                            Donetta W. Ambrose
                                            United States Senior District Judge

---

[3] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.